1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| The REVEREND SARAH MONROE; TIM QUIGG; and APRYL OBI BOLING; | NO. |
| Plaintiffs, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| v. | |
| CITY OF ABERDEEN, a municipal government; ERIK LARSON, Mayor of the City of Aberdeen; and KRIS KOSKI, City Engineer, | |
| Defendants. | |

Plaintiffs, the Reverend Sarah Monroe, Tim Quigg, and Apryl Obi Boling hereby allege as follows.

## I.      PARTIES

1.      The Reverend Sarah Monroe is a resident of Grays Harbor County, Washington and a pastor ordained by the Episcopal Church.

2.      Tim Quigg is a resident of Tacoma, Washington.

3.      Apryl Obi Boling is a resident of Grays Harbor County, Washington and a member of the Quileute Tribe.

4.      The City of Aberdeen is a municipal government located within the State of Washington and within the jurisdiction of the United States District Court for the Western District of Washington.

5.      Erik Larson is the Mayor of the City of Aberdeen.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 1
(3:18-CV-_____)

MON037-0001 5566961

1

2                     **II.    JURISDICTION AND VENUE**

3        6.      This Court has jurisdiction over the subject matter of this suit pursuant to 28

4    U.S.C. § 1343 (3), 42 U.S.C. §1983, and 28 U.S.C. §1367.

5        7.      This claim arose in the Western District of Washington.  On information and

6    belief all parties reside in the Western District of Washington.  Venue is proper in this Court

7    pursuant to 28 U.S.C. § 1391(b).

8                        **III.    OPERATIVE FACTS**

9        8.      In Aberdeen, Washington, homeless people have been camping and living on a

10   strip of land located on the banks of the Chehalis River for over a century.

11       9.      For decades the land where the homeless camp is was known as Hobo Beach.

12   In the past few years the land, which lies between the river and some railroad tracks, is known

13   as the Riverfront Camp.

14       10.     On information and belief, at present over 100 homeless people are residing at

15   the Riverfront Camp today.

16       11.      Until this year, the Riverfront Camp property was privately owned by Mike

17   Lang.

18       12.     In May of 2018, the Aberdeen City Council authorized Mayor Erik Larson to

19   negotiate the purchase of the Riverfront Camp property from Lang.

20       13.     In August of 2018, the City purchased the Riverfront Camp property for

21   $295,000.

22       14.     In July of 2018, Mayor Larson was reported in the Daily World newspaper as

23   saying that the Riverfront Camp property "is not a viable place for people to inhabit," that it

24   was "a dangerous place and [the homeless living on the property] cannot remain there."

25       15.     In mid-July the City installed a metal gate on River Street, the dirt road that

26   provides vehicle access to the Riverfront Camp property.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 2
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

16.     On or about September 25, 2018, the Office of the Mayor for the City of Aberdeen issued a statement "FOR IMMEDIATE RELEASE" announcing that it had begun the "clean-up of the River Road property." (Copy attached as Appendix A).

17.     In that statement the Mayor's office reiterated the City's position that the property was not safe for human habitation but also recognized the need for a transition period for people currently living on the property to find safe and/or permanent housing options.

18.     The statement contained assertions that the City "initially partnered with local agencies to assist in a transition," but [c]iting privacy client privacy concerns, those local agencies are not providing requested information to the City."

19.     In the statement issued by the Mayor, the City announced that no one could enter the Riverfront Camp property without the prior written permission of the City, and that anyone entering without such written permission would be trespassing, and that starting September 26th vehicle gates installed on the River Road would be closed to preclude vehicle access by anyone who did not have such prior written authorization to come onto the property.

20.     The statement of the Mayor's Office reads in pertinent part:

> Due to increasing vehicle traffic, illegal dumping on the property, and continued health and safety concerns, the City has placed No Trespassing signs and will actively enforce this provision on individuals entering the property without **prior written permission**. The requirement for prior written permission includes access by non-profits and advocacy organizations interested in providing support to those on the property. Vehicle gates installed at the entrance to the property will be closed starting Wednesday the 26th at 5:00 pm to further control vehicular access.

> Individuals and organizations interested in obtaining permission to access the site may contact the City of Aberdeen Public Works Department at (360) 537-3228.

(Appendix A) (emphasis in original).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 3
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

21.     In late September and/or early October, the City handed out notices in and near the Riverfront Camp property which warned that all "campers" living on the Riverfront Camp property had to register with the City by no later than October 15, 2018.

22.     The City's notices also warned against that even registered residents of Riverfront Camp property would not be allowed to invite unauthorized visitors onto the property. These notices stated:

### RIVERFRONT CAMP NOTICE

All Campers **must be** registered by Octo. 15, 2018.  See **Beth Troseth** at City Hall between 0900-1600.

Violating rules of the signed contract means eviction from Camp.  The City wants a "crime-free" location.

Driving over the tracks is a crime.  You will be cited, your vehicle subject to tow, and immediate eviction if caught.

Walking over the tracks is also a crime.  You will be cited and evicted for that as well.  Cross at H Street and Quiggs.

Housing or having visitors that do not have authority to be on the property could get you evicted.

Not proactively looking for or working with services for assistance could get you evicted.

### _PLEASE PASS THE WORD_

(Copy attached as Appendix B) (emphasis in original).

23.     On September 25, 2018, Mayor Erik Larson and Tawni Andrews, the President of the Aberdeen City Council, visited the Riverfront Camp property in the afternoon.  In addition, Aberdeen police officers went onto the Riverfront Camp property that day and they contacted the homeless people living there.  The police officers told the camp residents that they were required to register with the City, and the Chief of Police, Steve Shumate spoke with Reverend Monroe.

24.     Chief Shumate told Monroe that residents of the camp would be allowed to stay on the property temporarily as long as they were accessing services.  Reverend Monroe asked

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 4
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1  how long they would be allowed to stay and Chief Shumate responded that he did not know but

2  that he did not want to move people out during the winter.

3      25.     Some of the campers left the property because they did not want to provide the

4  City with the information the City was seeking.  Those that stayed were registered.  Aberdeen

5  police went tent to tent to gather people's names and dates of birth.

6      26.     According to the City, as of mid-October it had issued 108 residency permits to

7  people living on the Riverfront Camp property.

8      27.     The City has said that such permits are valid until May 1, 2019.

9      28.      On October 4, 2018, Reverend Monroe obtained an application for a permit that

10  would allow her to visit people living on the Riverfront Camp property.  She was given the

11  application form, entitled "Request for Access – River Street Property," from Beth Troseth, an

12  employee of the City's Public Works Department.

13      29.     The application form requires the applicant to supply his or her (or the

14  organization's) full name, date of birth, telephone number, address, contact information and to

15  describe the "Purpose for which access is requested."  (Copy attached as Appendix C).  The

16  applicant  is  also  required  to  affirm  a  statement  that  provides  in  part

17  that "I am requesting permission to access the River Street property for the purpose noted above,

18  and only for that purpose."

19      30.     By signing the application, the applicant also affirms that he or she

20  "understand[s] that if I do not follow rules of the property, permission for my access may be

21  immediately revoked and I will no longer have permission to access the property, and I will be

22  subject to trespass laws of the State of Washington."  (Appendix C).

23      31.     On October 4, 2018, Reverend Monroe submitted her application to the City

24  Department of Public Works.

25      32.     On October 18, 2018, having not heard anything from the City about the status

26  of her application, Reverend Monroe telephoned the City and spoke to Kris Koski, an engineer

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 5
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1   employed in the City's Public Works department.   Koski told Reverend Monroe that he had

2   denied her permit application and that he denied it on the same day (October 4) that she had

3   submitted it.

4       33.     On information and belief, based upon the newspaper article written by Louis

5   Krauss and published on Friday, November 2, 2018, Engineer Koski uses a flow chart that he

6   designed to determine whether an organization's request for access to the property will be

7   granted:

8         The completed forms are reviewed by [Rick] Sangder [Public Works Director]
          and City Engineer Kris Koski, who decide if an organization gets access or is
9         denied.  Their decision is based on a flow chart – which was drafted by Koski
          and then reviewed and edited by Mayor Erik Larson and the city's Legal
10       Department.  It checks if the applicants have a detailed work plan, and if they
          have "credentials with a recognized organization or agency."  Family members
11       and friends who know people living on the riverfront also have to go through
          this process to visit them.
12

13  "Aberdeen restricts who can enter homeless camps," *The Daily World*, 11/2/18 7:00 p.m. (Copy

14  attached as Appendix D).

15       34.     A copy of the City's "flow chart" that allegedly governs the decision-making

16  process is attached as Appendix E.

17       35.     Koski told Monroe that she should consider the phone conversation they were

18  having as official City confirmation of the denial of her application.  Koski told Monroe that

19  she had been called and told of the denial.  Reverend Monroe told him that was incorrect and

20  that's she had never been told that any action had been taken on her application.

21       36.     Reverend Monroe asked why it was denied, and Koski said it was because she

22  "did not give enough detail" about what she did.  Koski said the City was reviewing applications

23  to see whether the applicant had "credentials," whether they gave a detailed schedule as to when

24  they would be visiting the Riverfront Camp property, and whether they gave a detailed

25  description of what they would be doing on the property.

26

37.     Koski told Monroe that he agreed that she did have a "credential."  Reverend Monroe is an ordained priest of the Episcopal Church.

38.     Reverend Monroe provides pastoral services to homeless people who are living on the Riverfront Camp property.

39.     Pastoral services includes offering spiritual support to people who need it.  She often visits to provide pastoral support to people who are sick or dying, to people who are suicidal, or to someone who is simply vulnerable and needs to be checked up on.

40.     In order to minister to the spiritual needs of the residents of Riverfront Camp, Reverend Monroe needs to have access seven days a week, twenty four hours a day because the need for pastoral support is not something that occurs at particular times and thus it cannot be scheduled.  Reverend Monroe explained this to Engineer Koski.

41.     For example, on October 10, 2018, Reverend Monroe visited the Riverfront Camp to provide a ride to someone who was sick and needed to go to the hospital.  The sick person was not mobile and could not walk.  Because the City of Aberdeen had blocked off the road that leads into the camp, no vehicle could drive into the property, so Reverend Monroe could not drive close to the sick man's shelter.

42.     To solve this problem, other residents of the camp put the sick man in a wheelbarrow and wheeled him out past the gate that blocked vehicle access so that he could get to Reverend Monroe's vehicle.

43.     On information and belief, based upon the same November 2, 2018 newspaper article, the City has granted the access application of a nonprofit organization called Revival of Grays Harbor.  As reported in that newspaper article, the President of Revival of Grays Harbor, Phil Calloway, has criticized the City's refusal to grant Reverend Monroe's application:

> As an example of an approved organization, Revival of Grays Harbor is a non-profit homeless assistance group that the city has approved to have two days each week when they can go onto the property.  Phil Calloway, the president of Revival, said he uses this time to check the wellness of campers and make sure they're getting health and social services.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 7
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Calloway added that he believes it's wrong for the city to deny service providers like Monroe access to the property to help people, and added that many of the clients Revival helps get services are connected to them by Monroe.

"I think it's definitely wrong, her as a pastor should have the freedom to (provide service)," said Calloway.  "I think they're restricting some things in a bad way there.  Revival has had people come through her for us to better them."

"Aberdeen restricts," *supra* (Appendix D).

44.    Tim Quigg was born in Aberdeen in 1954 and he lived there for the first 32 years of his life.   He has lived in Tacoma for the past ten years.

45.    Since 1895, the Quigg family has owned and operated businesses in Aberdeen, such as lumber mills, railroads, paper mills and construction.

46.    Tim Quigg has formed personal relationships with several people who live in the Riverfront Camp located on the banks of the Chehalis River.   Many of his friends use nicknames rather than the official legal names, and thus Quigg often does not know their legal names.

47.    He has done volunteer work in Aberdeen with the Low Income Housing Institute (LIHI), the Aberdeen Revitalization Movement (ARM), the Boy Scouts of America, Sea Scouts, and Grays Harbor Foundation.

48.    Quigg regularly visits the Riverfront Camp.   He has gone there about once a week for the past six years.

49.    However, once the City of Aberdeen announced that only people with City approval can visit the Riverfront Camp in late September, he has stopped going there.

50.    Prior to that time, Quigg often brought truckloads of firewood to the Riverfront Camp so that the residents would have firewood to burn for cooking and for warmth.

51.    Prior to the City's announcement regarding the need for city authorization, Quigg often paid camp residents to do small jobs, such as returning abandoned shopping carts to the stores from which they were taken and picking up garbage.

52.    In the past, Quigg took clothes to the camp and gave them to residents.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 8
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

53.     In the past, Quigg has taken camp residents to McDonalds to get them something to eat and has driven them to town.

54.     In the past, Quigg built footpaths inside the camp with rock so that residents could get to individual campsites while staying out of the mud.  Before the City assumed ownership of the property, Quigg paid the "tipping fee" charged at the dump when garbage from the property was delivered there.

55.     In the past, Quigg took politicians and visitors from media and religious organizations, to visit the camp.

56.     Deterred by the threat of arrest and prosecution for trespassing, Quigg has not visited the Riverfront Camp property since late September of 2018.

57.     Quigg did go the office of the Public Works Department and he did obtain a copy of the access application form from Beth Troseth.  He read the form.  He told Troseth that he was not going to submit an application.  He objects to having to submit an application to the City to seek City approval to go onto the property in order to visit its residents and he has not submitted any application.  He objects to having to get permission to visit his friends.

58.     Virtually none of Quigg's friends who live in the Riverfront Camp have working cars and thus none of them can drive out of the camp in order to visit Quigg somewhere else.

59.     Quigg does not provide "services" to camp residents in the same way that a non-profit organization or a church does.  He does not have any "credentials with a recognized organization or agency" as required by the City's *Flowchart for Permission to Be on Property*. He simply provides financial support and supplies to the residents because, as an individual, that is what he feels called to do.

60.     Apryl Obi Boling moved to Aberdeen, Washington in 1989.  She has lived in Aberdeen ever since.

61.     Boling is an enrolled member of the Quileute Nation.  She has relatives who are members of the Quinault and Quileute Tribes.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 9
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

62.     Boling's cousin Leon Obi has been living on the Riverfront Camp property for approximately five years.  Boling's nephew Rowley Mason has been living there approximately one and a half years.

63.     Boling regularly visits her cousin Leon at the Riverfront Camp approximately four times a week.  She also visits her nephew Rowley Mason somewhat less frequently.

64.     There are roughly 30 Native Americans living on the Riverfront Camp property and Boling is related to about 15 of them.  She visits those other relatives as well.

65.     She brings firewood to Leon.  Leon's girlfriend Shawna (last name unknown) has epilepsy and suffers seizures.  Shawna's condition is worse when she is cold.  By making fires with the firewood Boling brings, Boling helps to keep Shawna warm and thus alleviates her condition.

66.     The Mayor has told Boling that she must obtain a permit in order to visit her relatives and friends who live in the Riverfront Camp.  Boling has told the Mayor that she refuses to do that.  She believes it is unlawful for the City to tell her that she needs the City's permission to visit them.

67.     On October 30, 2018 the Mayor posted the following message on Boling's Facebook page:

> You should not be on the property Apryl. If you have family members on the property, they can visit with you somewhere else.  If there is a religious or tribal ceremony which must take place on the property, please submit an application detailing that information.
>
> I feel like you are more interested in finding issue with how we are trying to address this situation than working to make progress easier. I hope you prove me wrong.

68. Boling has told the Mayor she does not need the City's permission to visit her relatives and that she will not apply for such permission.  She also believes that she does not need the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 10
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1   permission of the City to visit her fellow tribal members who live on the Riverfront Camp

2   property.

3          69.     Boling works with many of the homeless in the camp. Her home is less than half

4   a mile from the camp.

5          70.     Around September of this year the City Council enacted an ordinance that makes

6   it a crime for people to sit on public sidewalks during certain hours of the day.  In May of this

7   year, Boling organized a demonstration to protest the proposed adoption of this ordinance.  As

8   part of the demonstration, Native American drummers from the Quinault Nation participated in

9   a silent walk in honor of homeless people who have died on the streets of Aberdeen or in the

10  Riverfront camp.  Over 75 people participates in the march.

11         71.     After the demonstration, Boling's home was vandalized.  Eggs were thrown at

12  the house, bags of trash and broken glass were dumped in her backyard.  Boling reported these

13  things to the city police but they refused to take any action because they said they didn't know

14  who it was who did it.

15         72.     Boling believes that some Aberdeen police officers are compassionate and that

16  they seem to look the other way when they encounter people going onto the River Camp

17  property.  She believes that other officers are not sympathetic.  She is afraid of being arrested

18  but nevertheless she continues to go onto the property to visit her cousin, her nephew and others,

19  and to take supplies and food into the camp.

20                **IV.    CAUSES OF ACTION**

21  **Deprivation of Freedom of Speech Guaranteed by the First Amendment**

22         **73**.     Defendants, acting under color of state law, have deprived plaintiffs of their First

23  Amendment right of freedom of speech, contrary to 42 U.S.C. §1983, by imposing a prior

24  restraint on their ability to speak to the people living on the Riverfront Camp property.

25

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 11
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**Deprivation of Freedom of Religious Exercise Guaranteed by the First Amendment**

74.     Defendants, acting under color of state law, have deprived Plaintiff Monroe, of her First Amendment right of freedom of religious exercise, by impeding and preventing her from providing pastoral services to the people living on the Riverfront Camp property.

**Deprivation of the Washington State Constitutional Right to Intrastate Freedom of Travel**

75.     Defendants have deprived, and continue to deprive Plaintiffs of their right to freedom of intrastate travel guaranteed by the Washington Constitution,

**Deprivation of the Property Right to Invite People to Visit Them at their Homes.**

76.     Defendants have deprived the residents of River Camp, of their common law right to invite guests to visit them at their homes, and have deprived their guests of their right to accept this invitation and to visit them.

## V.     JURY DEMAND

77.     Plaintiffs demand a jury trial on their claims for compensatory and punitive damages.

## VI.     PRAYER FOR RELIEF

Wherefore, having stated their complaint against the defendants, plaintiffs pray for the following relief:

1.     Judgment against defendants for compensatory damages in an amount to be proved at trial.

2.     Judgment against defendants for punitive damages, in an amount to be proved at trial.

3.     An award of costs and attorneys' fees, as provided in 42 U.S.C. § 1988, and other provisions of statutory and common law;

4.     For an injunction prohibiting defendants from requiring plaintiffs to get permission from the City of Aberdeen to go onto the riverfront property in order to visit with, talk to, or deliver counseling or pastoral services to any person living in the riverfront camp.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 12
(3:18-CV-_____)

MON037-0001 5566961

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1          5.      For an injunction prohibiting defendants from blocking the access road that leads

2    to the riverfront camp, or from impeding vehicle access to the riverfront camp.

3          6.      For such other relief as the Court may deem just.

4          DATED this 19th day of November, 2018.

5
                                         _s/ James E. Lobsenz_____
6                                        James E. Lobsenz WSBA #8787
                                         Attorneys for Plaintiffs
7                                        CARNEY BADLEY SPELLMAN, P.S.
                                         701 Fifth Avenue, Suite 3600
8                                        Seattle, WA 98104
                                         Phone:  (206) 622-8020
9                                        Facsimile:  (206) 467-8215

10
                                         _s/ Todd Maybrown_____
11                                       Todd Maybrown WSBA #18557
                                         ALLEN HANSEN & MAYBROWN
12                                       600 University, Suite 3020
                                         Seattle, WA 98101
13                                       Phone:  (206) 447-9681
                                         Facsimile:  (206) 447-0839
14

15                                       Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – 13
(3:18-CV-_____)

MON037-0001 5566961

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX A



# Mayor Erik Larson
1 hr · ⊛



City of
Aberdeen

Office of the Mayor
200 East Market Street • Aberdeen, WA 98520-5242
PHONE (360) 537-3227 • EMAIL elarson@aberdeenwa.gov
FAX (360) 537-3238 • TDD (360) 533-6668 ——————————

### FOR IMMEDIATE RELEASE

City of Aberdeen Clean-up Efforts at River Road Property
(Property commonly referred to as "River Camp")

The City of Aberdeen has begun the clean-up of the River Road property, having removed much of the garbage and cleared most of the overgrown vegetation and brush from the property. With this work almost done, we will begin working to remove vehicles and temporary structures from the property. In the meantime, we have provided portable toilets and garbage collection at the property on a temporary basis to improve sanitary conditions.

The City maintains its position that the property is not safe for human habitation. The City continues to recognize the need for a transition period for people currently on the property to find safe and/or permanent housing options.

The City initially partnered with local agencies to assist in a transition. Citing client privacy concerns, those local agencies are not providing requested information to the City. Therefore, the City will enter the site to identify individuals at the property, and to ensure safe and efficient relocation from the property.

Due to increasing vehicle traffic, illegal dumping on the property, and continued health and safety concerns, the City has placed No Trespassing signs and will actively enforce this provision on individuals entering the property without **prior written permission**. The requirement for prior written permission includes access by non-profits and advocacy organizations interested in providing support to those on the property. Vehicle gates installed at the entrance to the property will be closed starting Wednesday the 26th at 5:00pm to further control vehicular access.

Individuals and organizations interested in obtaining permission to access the site may contact the City of Aberdeen Public Works Department at (360) 537-3228.

###

# APPENDIX B

## RIVERFRONT CAMP NOTICE

All Campers **must be** registered by Oct 15, 20018
See **Beth Troseth** at City Hall between 0900-1600

Violating rules of the signed contract means eviction
from Camp. The City wants a "crime-free" location.

Driving over the tracks is a crime. You will be cited, your
vehicle subject to tow, and immediate eviction if caught.

Walking over the tracks is also a crime. You will be cited
and evicted for that as well. Cross at H Street and Quiggs.

Housing or having visitors that do not have authority to
be on the property could get you evicted.

Not proactively looking for or working with services for
assistance could get you evicted.

## PLEASE PASS THE WORD

# APPENDIX C

**RECEIVED**
OCT 04 2018
*City of Aberdeen*

10:21 am
BY/Dept_____

*CITY OF ABERDEEN TO MAINTAIN ORIGINAL, COPY PROVIDED TO REQUESTOR*

## CITY OF ABERDEEN PUBLIC WORKS DEPARTMENT

### Request for Access – River Street Property

(Form Date: September 28, 2018 – AMENDMENT 3)

Full Name/Organization: The Rev Sarah Monroe / Chaplains on the Harbor
(if organization, provide names of person(s) to be included in this request)

Date of Birth: 3-14-83
Telephone/Address/Contact Information:     PO Box 1248

Westport, WA 98595
360-581-7006

Purpose for which access is requested: _____
I serve as people's pastor and need access to check
in with people 8 in cases of emergency.

I The Rev Sarah Monroe (name/organization) affirm that I am requesting permission to access
the River Street property for the purpose noted above, and only for that purpose. I also agree that by
submitting this request I will: abide by all applicable federal, state and local laws including signs posted
at the property; and, will treat all persons at the property civilly and with respect; and, will do my best
to support a clean and organized site using facilities provided for trash collection and other sanitary
purposes. I understand that if I do not follow rules of the property, permission for my access may be
immediately revoked and I will no longer have permission to access the property, and I will be subject
to trespass laws of the State and the City.

Date: 10-4-18

Signature: The Rev Sarah Mon

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CITY OF ABERDEEN PUBLIC WORKS: REQUEST # ___8___

_____ Approved   [or]   _____ Denied          By/Date:

*Limitations/Conditions:*
One Time Access: _____   Time Period Access: _____

Other (Describe): _____

# APPENDIX D

Louis Krauss | Grays Harbor News Group One of the signs posted at the homeless camps along the Chehalis Riverfront property.

# ARTICLE 1Aberdeen restricts who can enter homeless camps

- LOUIS KRAUSS
- Fri Nov 2nd, 2018 7:00pm
- NEWS

For the past five years, the Rev. Sarah Monroe from Chaplains on the Harbor has served the role as a pastor and service provider for the more than 100 homeless people who live in tents, shacks and vehicles along the Chehalis River in Aberdeen.

The city recently purchased the land where most of the homeless are camping. As city officials work toward eventually removing everyone living on the riverfront, the city's Public Works Department has begun regulating which homeless assistance groups can get the city's written permission to enter the property, and Monroe was denied access. Monroe said she is upset with what she sees as the city's attempts to make it more difficult for people living on the river to get help.

"To limit peoples' access to support is cruel," Monroe said in an interview. "I'm angry on behalf of people who are being isolated (at the camps)."

According to Public Works Director Rick Sangder, Monroe was denied because her application didn't have a specific work plan or schedule.The city wants those providing services to go at certain hours each week, not on an open ended schedule. Monroe said her pastoral work requires her to respond to emergencies regardless of when they happen.

"One of the things pastoral care involves, if you ask any pastor, is responding in crisis. There's not a schedule for when people die, when people get sick, or decide they're suicidal and need to talk," said Monroe, who operates a cold weather shelter in Westport that also provides free meals. "The plan is I'm their pastor, and I respond when there's a need."

### Getting "approval"

In order to get the city's written permission to enter the homeless camps, service providers fill out an application form from Aberdeen's Public Works office. That application asks why the group wants access to the property, and states that applicants need to abide by the city's rules regarding the site.

The completed forms are reviewed by Sangder and City Engineer Kris Koski, who decide if an organization gets access or is denied. Their decision is based on a flow chart — which was drafted by Koski and then reviewed and edited by Mayor Erik Larson and the city's Legal Department. It checks if the applicants have a detailed work plan, and if they have "credentials with a recognized organization or agency." Family members and friends who know people living on the riverfront also have to go through this process to visit them.

As an example of an approved organization, Revival of Grays Harbor is a non-profit homeless assistance group that the city has approved to have two days each week when they can go onto the property. Phil Calloway, the president of Revival, said he uses this time to check the wellness of campers and make sure they're getting health and social services.

Calloway added that he believe's it's wrong for the city to deny service providers like Monroe access to the property to help people, and added that many of the clients Revival helps get services were connected to them by Monroe.

"I think it's definitely wrong, her as a pastor should have the freedom to (provide service)," said Calloway. "I think they're restricting some things in a bad way there. Revival has had people come through her for us to better them."

**Police enforcement**

Aberdeen Police Chief Steve Shumate said that officers are not arresting people at the campsites simply for not having the city's written authorization papers, and added that no one has been arrested for that so far.

Multiple campers told *The Daily World* that they have been confronted by police officers saying they have 24 hours to leave the property or would be arrested for a felony trespassing charge because they didn't have their papers.

Shumate said that officers have been patrolling the area more heavily since the city began managing it, but added that the department is more focused on responding to other issues in the city than with checking campers' for verification.

"My direction to (officers) is we want to focus our efforts on our downtown businesses and dealing with issues there," said Shumate. "If they get called to the riverfront, obviously we'll respond."

Misty Micheau, 43, has lived on the property for the past eight years, but said she was recently denied authorization from the city because she moved away from the campsite for a month. Micheau said she was living with her boyfriend for that one month she was gone, but had to move back to the camps after her partner became ill and was placed on life support.

"I guess I moved and came back and they don't want that, but under the circumstances you'd think they would understand," said Micheau.

Shumate confirmed that officers likely have instructed people on the riverfront to leave the property because of not having the city's approval, and said these efforts are keeping away people he believes were victimizing the rest of the homeless campers.

"People were coming and going, and individuals, quite frankly, were victimizing the homeless community," he said. "From that standpoint, things are definitely better, because those who do not want to have contact with law enforcement are going elsewhere, and that's a good thing."

Monroe said she knows around four people who have been forced to move so far, who were either instructed to leave or were arrested for other charges and then are told they can't return.

Going forward, Monroe said she would continue to serve as a pastor for people on the riverfront, which also involves taking people to medical and housing appointments, and checking in on the ill or giving them their last rites. She noted she is afraid police will at some point force her to leave.

Shumate wouldn't rule out that police will enforce the restrictions on homeless assistance providers entering the property, but he said the department does support those looking to support the homeless people on the property.

"Obviously, anybody who's down there looking to advocate and support that community, we support that," he said. "On the flip side, I can't say, 'No, we're not going to enforce any of that.'"

**City's steps to restrict and clear the site**

When Mayor Erik Larson was asked about why there can't be some organizations allowed in to assist whenever needed and without a schedule, Larson said he would much rather have individuals get services off-site from the camps unless it's completely necessary for someone to get on-site care.

"Where it's necessary, we're working with individuals, and where it's just convenient, we're drawing a line and saying, 'Convenience is not a factor,'" Larson said. "I think there's a lot of people frustrated about losing the convenience, but it does not trump the safety issues, (like) the added access to the property and crossing the railroad."

If someone is denied access to the property, Sangder and Larson said the city will work with organizations to create a schedule that they can accept.

In terms of an end goal, Larson has said the city wants to remove everyone from the property, and told *The Daily World* he is still looking for a property where the homeless people currently allowed on the property could move to.

"We're trying to decrease the number of people on that property," he said. "We're not trying to make it a treatment facility, we're trying to do the opposite of that."

If the city did ever provide campsites or shelters for the riverfront campers, Larson said he does not envision it being a permanent shelter to address homelessness in the area, and would only be for the people moving from the riverfront.

"If we do something like that, it will be only for those people relocating, I do not see it being something that becomes a permanent service of the City of Aberdeen to address homelessness," said Larson. "I don't think that's something the city is in a position to get behind at this point."

Some homeless advocates and local residents on social media and in conversation have questioned whether the city's process of restricting who goes down to the riverfront is legal, since it's a city-owned property that was deemed restricted access.

Larson said because of the safety concerns of limiting people entering the property, the city has the right to make it restricted.



Louis Krauss | The Daily World Several of the Raging Grannies sing at the last Aberdeen City Council meeting. The lyrics were primarily about the citys rules restricting people and services from the Chehalis riverfront homeless camps: The citys rules are so preposterous, and winters coming soon. We only want to help our friends, comfort them and see to them, dont deny access to us.

This is the flow chart used by Aberdeen Public Works to determine if people are allowed to live at the Chehalis riverfront camps, and if service agencies or individuals are allowed to enter.

# APPENDIX E

REQUEST # _____     REVIEWED BY _____     REVIEW DATE _____

FLOWCHART FOR PERMISSION TO BE ON PROPERTY
  The following may be on the property without an application
    Public Safety emergency response, City staff with approval from a manager, and anyone transiting the property as part of emergency egress
  All others must obtain permission to be on the property from the Public Works Department by submitting an application
  Applications must be obtained at and submitted to the Public Works Department at the second floor of City Hall
  The Public Works Director or his designee will review the application per the following process
    Request due to applicant wishing to move to the property
      Denied
    Request due to applicant residing at the property
      Applicant is on census
        Approved
      Applicant is not on census
        Public Works sends application to Police for verification
          Applicant has been on property since October 15, 2018 or earlier
            Approved
          Applicant moved to property after October 15, 2018 or does not live on property
            Denied
    Request not due to applicant residing at the property
      Purpose is for providing general aid or assistance to those living on property
        Applicant has credentials with a recognized organization or agency
          Applicant has detailed work plan
            Public Works Director reviews and makes determination considering the following
              Services duplicate those provided offsite locally?
              If food service, does work plan include storage and pest response?
              If multiple orgs provide same service, are they coordinating?
          Applicant does not have detailed work plan
            Denied
        Applicant does not have credentials with a recognized organization
          Denied
      Purpose is for providing medical aid to specific person on property (not including emergency medical response calls)
        Public Works Director reviews and makes determination considering the following
          Need identified?
          Requestor is with organization that normally provides such aid?
      Purpose is for contacting family member or person believed to be in danger (not including Police welfare checks)
        Public Works Director reviews and makes determination
      All other purposes
        Denied
          Applicant may appeal to Public Works Department at 360-537-3224
  Application is approved
    Original application stays on file in the Public Works Department
    Copies of applications are sent to Police Department and provided to applicant
  Application is denied
    Original application stays on file in the Public Works Department
    Copy of application is offered to applicant

FLOWCHART FOR PERMISSION TO USE GATE
  The following may access the gate without an application
    Public Safety emergency response and City staff with approval from a manager
    Aniram Properties LLC, Puget Sound & Pacific Railroad, Harbor Resources Inc., or their designees
  All others must obtain permission to use the gate from the Public Works Department by submitting an application
  Applications must be obtained at and submitted to the Public Works Department at the second flood of City Hall
    Public Works Director reviews and makes determination
  Application is approved
    Original application stays on file in the Public Works Department
    Copies of applications are sent to Police Department and provided to applicant
  Application is denied
    Original application stays on file in the Public Works Department
    Copy of application is offered to applicant